**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

BARRY HONIG, an individual,                    CASE NO.

            Plaintiff,                                COMPLAINT

   v.

TERI BUHL, an individual, and DOES 1-20,

            Defendants.

_____

      Plaintiff alleges:

## SUMMARY OF THE CASE

      Plaintiff is a private investor who was the victim of defamatory articles published on the Internet by Defendant Teri Buhl, who styles herself as an investigative journalist.  Buhl's articles falsely accuse Plaintiff of serious violations of laws and falsely state that he is under investigation by the government.  Buhl has solely created and perpetuates a fanciful story demonizing Mr. Honig on the basis of her own ill-informed conjecture, unsupported by any reliable sources.  If Buhl has any actual sources at all, they are unreliable and likely seeking to deflect attention away from themselves because they are the targets of the very governmental scrutiny in which Buhl falsely alleges against Mr. Honig.  The defamatory statements by Buhl, discussed herein, have injured Plaintiff in his trade and profession, and are continuing to cause him substantial harm.

## PARTIES

    1.     Plaintiff Barry Honig is a private investor who resides in and is a domiciliary of

1

Palm Beach County, Florida.

2.      On information and belief, Defendant Teri Buhl is a writer who resides in and is a domiciliary of New York City, New York and operates a weblog at www.teribuhl.com.

3.      Plaintiff is presently unaware of the identities of the defendants sued herein as DOES 1-20, and will amend this Complaint to identify them once Plaintiff learns of their true identities.  Defendant Buhl and DOES 1-20 are collectively referred to herein as "Defendants."

4.      On information and belief, Defendants, and each of them, were and are the agents, licensees, employees, partners, joint-venturers, co-conspirators, owners, principals, and employers of the remaining Defendants and each of them are, and at all times mentioned herein were, acting within the course and scope of that agency, license, partnership, employment, conspiracy, ownership, or joint venture.  On further information and belief, the acts and conduct herein alleged of each of the Defendants were known to, authorized by and/or ratified by the other Defendants, and each of them.

## JURISDICTION & VENUE

5.      This Court has personal jurisdiction over Defendants because they have minimum contacts with the State of New York and/or are domiciliaries of the State of New York.

6.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of the parties to this action and the amount in controversy exceeds $75,000.

7.      Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b), in that the named Defendant resides here and a substantial part of the events or omissions giving rise to this complaint occurred here.

## FACTS RELEVANT TO ALL CAUSES OF ACTIONS

8.      On or about May 26, 2016, Ms. Buhl published a story on teribuhl.com entitled "Microcap Attorney Jaclin's Co-Conspirator Turned DOJ Witness in Shell Factory Scheme".  A true copy of the May 26, 2016 article is attached hereto as **Exhibit A**.

9.      The May 26, 2016 article contains the statement: "But it's possible more players in the microcap space will be arrested by the DOJ or charged with an enforcement action by the SEC. One name that comes to mind is microcap financer Barry Honig."  This statement is false. Plaintiff is not the target of any such investigation or enforcement action, and there is no basis to believe an arrest will be made by the DOJ or that Barry Honig will be charged in an enforcement action by the SEC involving the matters in the article published by Ms. Buhl reproduced as **Exhibit A**.

10.     On or about September 23, 2016, Ms. Buhl published another story on teribuhl.com entitled "Investor Barry Honig Target of SEC MGT Capital Subpoena".  A true copy of the original version of the September 23, 2016 article is attached hereto as **Exhibit B**.

11.     The original version of the September 23, 2016 article contains the following false and defamatory statements:

        a.      "Investor Barry Honig Target of SEC MGT Capital Subpoena"

        b.      "Microcap investor Barry C. Honig is the target of an SEC investigation for his role in trading and investing in shares of MGT Capital ($MGT)."

        c.      "90% of the regulator's questions are about Honig."

        d.      "Honig has been calling SEC enforcement defense lawyers this week looking for representation."

     e.     "Barry uses other people to run a company he is secretly controlling and pays stock pumpers to tout the company without disclosure."

     f.     Plaintiff "runs things behind the scene."

     g.     Plaintiff allegedly engages in "tons of questionable pump and dump deals".

     h.     Plaintiff's counsel allegedly "has been able to keep the SEC at bay".

     i.     Plaintiff "teamed up with his favorite investing partner Michael Brauser".

     j.     Plaintiff "acted as an affiliate in trading MGT stock".

     k.     "Market participants sit on the side line to see if the SEC can get the goods to finally charge Barry Honig".

12.     The statements in the original September 23, 2016 article are false.  Plaintiff is not the target of a subpoena to Plaintiff or an investigation as falsely stated by Teri Buhl, or the subject of 90 percent of a regulator's questions to MGT.  Plaintiff has not been looking for an SEC enforcement defense lawyer.  Plaintiff is a passive investor and does not run things behind the scenes and is not involved in "pump and dump" schemes.  Plaintiff has never paid a stock promoter to tout the company without disclosure.  He also has no affiliation with anyone in MGT Capital's management or its Board of Directors.  Plaintiff also has not teamed up with Michael Brauser.

13.     On or about September 23, 2016, a written communication was delivered to Defendant Buhl identifying the foregoing false and defamatory statements about Plaintiff and demanding a retraction and apology.  Defendant Buhl refused to comply with the retraction and apology.  Instead, Defendant Buhl changed the title of her article to "Investor Barry Honig

*Subject* of SEC MGT Capital Subpoena", an equally false statement misleading readers into the belief Plaintiff is the sole the focus of a routine SEC subpoena served on MGT, and published an amended version of the article.  A true copy of the amended September 23, 2016 article is attached hereto as **Exhibit C**.  (Exhibits A through C are collectively referred to herein as the "Defamatory Articles".)

14.     The amended September 23, 2016 article repeated many of the defamatory statements about Plaintiff and added two new defamatory statements about Plaintiff:

a.     "Barry Honig is pulling out the big legal guns apparently worried about what's inside that SEC subpoena."

b.     "Additionally, Honig had two days to respond to questions about the subpoena and refused to return a call and email for comment."

15.     The two new statements, added to the amended September 23, 2016 article, are false.  Plaintiff is not worried about what is inside any alleged SEC subpoena, and engaged a well-known libel lawyer for the specific purpose of putting Defendant Buhl on notice of her false and defamatory statements about Plaintiff, and demanding a retraction and apology of same. Further, Plaintiff did not have two days to respond to Defendant Buhl's reporting.  Defendant Buhl did not send any written request for comment to Plaintiff himself, but rather sent a very cryptic statement to Plaintiff's representative that provided no information at all about what Defendant Buhl intended to report, or what specifically she was asking Plaintiff to comment on. The statements identified in Paragraph 11, above, certainly were not contained or referenced in any way in Defendant Buhl's email to Plaintiff's representative for comment.

16.     On September 23, 2016, Plaintiff's libel counsel sent Defendant Buhl a second

5

written communication setting forth additional defamatory statements by Buhl against Plaintiff,

namely, the two defamatory statements in the amended September 23, 2016 article, and the

defamatory statement in the May 26, 2016.  Plaintiff counsel requested a retraction and apology

regarding same, as well as made a second request for a retraction and apology of the defamatory

statements listed above in Paragraph 11 herein.  Ms. Buhl did not retract any of the defamatory

statements and did not apologize, and instead responded by email that she would not do so.

## FIRST CAUSE OF ACTION
### (Libel)

17.    Plaintiff hereby incorporates by this reference each allegation set forth in

paragraphs 1 through 16 of this Complaint as if fully set forth herein.

18.    The Defamatory Articles contain false and defamatory statements of and concerning

Plaintiff as more fully stated above.

19.    These false statements are libelous because they wrongly accuse Plaintiff of

involvement in serious violations of securities law and being under investigation for same, and of

hiring counsel because he fears such an investigation.  These false statements would tend to

subject Plaintiff to hatred, distrust, contempt, aversion, ridicule and disgrace in the minds of a

substantial number in the community, and were calculated to harm Plaintiff's social and business

relationships, and did harm his social and business relationships.

20.    The false statements also constitute libel *per se* because they disparage and discredit

Plaintiff in the way of his profession and trade as an investor.

21.    The statements made by Defendants were false and no applicable privilege or

authorization protecting the statements can attach to them.

22.    Plaintiff has been seriously damaged as a direct and proximate cause of the falsity

6

of the statements made by Defendants in an amount to be determined at trial.  The false statements attribute conduct, characteristics and conditions incompatible with the proper exercise of Plaintiff's business as an investor.

23.    The Defamatory Statements were widely disseminated on the Internet, in part because Defendant Buhl distributed her May and September 2016 articles via her Twitter account, and in part because other individuals and companies, including news organizations, come to teribuhl.com for financial news, and republish her stories for their readers to read.  The Defamatory Statements were re-published by others, and Defendant Buhl was aware of this process and that republications of the Defamatory statements would occur once she published to Defamatory Statements herself.

24.    Defendants actions were intended to hold Plaintiff up to ridicule and to damage his personal and professional relationships.

25.    Publication of the Defamatory Statements is egregious conduct constituting moral turpitude.  As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages relating to Defendants' publication of the Defamatory Statements, in an amount to be determined at trial.

26.    Plaintiff has complied with all notice requirements prior to filing this action by informing Defendant Buhl of her defamatory statements, and requesting a retraction, in two e-mails dated September 23, 2016.  Defendant Buhl directly responded to Plaintiff's counsel after receiving each such email, to state that she would not comply with the demand for retraction and apology of the Defamatory Statements.

## SECOND CAUSE OF ACTION
### (Intentional Interference with Prospective Economic Advantage)

27.    Plaintiff hereby incorporates by this reference each allegation set forth in paragraphs 1 through 16 of this Complaint as if fully set forth herein.

28.    Defendants knew that Plaintiff, being an investor, had business relationships as well as a reasonable expectation of entering into valid business relationships, which would have been completed had it not been for Defendants' unlawful acts.

29.    On information and belief, as a direct result of Defendants' publication of the Defamatory Statements about Plaintiff, Plaintiff has lost business relationships and/or Plaintiff's existing business relationships have been harmed.

30.    Defendants acted solely out of malice, and/or used dishonest, unfair or improper means to interfere with Plaintiff's actual and prospective business relationships.

31.    Defendants, through the misconduct alleged herein, intended to harm Plaintiff by intentionally and unjustifiably interfering with his actual and prospective business relationships.

32.    Defendants have seriously damaged Plaintiff's actual and prospective business relationships as a direct and proximate cause of the aforementioned acts.

33.    The above-described conduct is egregious and constitutes moral turpitude.  As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

(a)  An award of damages to Plaintiff in an amount to be determined at trial;

8

(b)  An award of punitive damages to Plaintiff in an amount to be determined at

trial;

(c)  An order requiring Defendants to make a public retraction of the Defamatory

Articles;

(d)  An order granting preliminary and permanent injunctive relief to prevent

defendants from continuing to publish or disseminate the Defamatory Articles;

and

(e)  An award of such other and further relief as the Court may deem just and

proper.


Dated:  September 26, 2016                    Respectfully submitted,


                                             **HARDER MIRELL & ABRAMS LLP**


                                             By: _/s/ Charles J. Harder_____

                                             Charles J. Harder, Esq.
                                             132 S. Rodeo Drive, Fourth Floor
                                             Beverly Hills, California 90212
                                             Tel. (424) 203-1600

                                             Milo Silberstein, Esq.
                                             Dealy Silberstein & Braverman, LLP
                                             225 Broadway, Suite 1405
                                             New York, New York 10007
                                             Tel.  (212) 385-0066

                                             *Counsel for Plaintiff*